301 So.2d 906 (1974)
Joe C. SMITH d/b/a Joe C. Smith & Co., Plaintiff-Appellee,
v.
UTILITY & MAINTENANCE CONTRACTORS OF AMERICA, INC., Defendant-Appellant.
No. 12310.
Court of Appeal of Louisiana, Second Circuit.
May 28, 1974.
On Rehearing October 1, 1974.
Rehearing Denied October 1, 1974.
Writ Refused January 10, 1975.
Richard K. Dimitry, New Orleans, for defendant-appellant.
Barham, Campbell & Adkins by Ronald G. Coleman and Kenneth W. Campbell, Ruston, for plaintiff-appellee.
Before AYRES, HALL and WILLIAMS, JJ.
Rehearing En Banc Denied October 1, 1974.
HALL, Judge.
The issues presented by this appeal are (1) whether defendant has the right to appeal from a judgment overruling a motion to dissolve a writ of attachment and rejecting defendant's prayer for damages and attorney's *907 fees and, if so, (2) whether the writ of attachment was wrongfully obtained and, if so, (3) the amount of damages to which defendant is entitled.
Plaintiff, Joe C. Smith, d/b/a Joe C. Smith & Co., filed suit against defendant, Utility & Maintenance Contractors of America, Inc., seeking to recover the sum of $874.50 for services rendered by plaintiff to defendant. Alleging that "it lies within the power of the defendant, Utility & Maintenance Contractors of America, Inc., to mortgage, assign, dispose of or remove from this Parish, with the intent to defraud its creditors or to place beyond the reach of its creditors," certain property, plaintiff prayed that a writ of attachment issue for the seizure of five items of equipment owned by defendant. An order was signed ordering a writ of attachment issued as prayed for upon plaintiff furnishing bond in the amount of $250. The $250 bond was posted and the property was seized.
Defendant filed a motion to dissolve the writ of attachment or, alternatively, to reduce the attachment, and prayed for damages including reasonable attorney's fees. The motion alleges the writ of attachment was wrongfully obtained because plaintiff's petition did not allege facts which constitute grounds for an attachment under the provisions of LSA-C.C.P. Art. 3541 and because the amount of security furnished by plaintiff was less than the amount of plaintiff's demand and, therefore, did not comply with the provisions of LSA-C.C.P. Art. 3544.
The rule issued pursuant to plaintiff's motion was tried on October 11, 1973, with evidence being adduced as to the grounds for the attachment and as to damages sustained by defendant. At the conclusion of the trial, the district court found that plaintiff acted in a reasonable way in causing the writ of attachment to issue on the basis of a statement made by one of defendant's employees to the effect that plaintiff had better seize defendant's property to secure his indebtedness because if he did not the property would be taken elsewhere, and on the basis of defendant's obvious financial difficulties. The court denied the motion to dissolve but found the seizure to be excessive and ordered the release of all the items seized except one. The court further ordered the bond increased from $250 to $1,000. The minutes of the court reflect that the court "ordered all the equipment released from the seizure except the John Deere Tractor with sideboom and ordered the amount of plaintiff's bond increased to $1,000.00".
On October 14, 1973, plaintiff filed a bond in the amount of $1,000.
On November 15, 1973, a "judgment on rule" was signed ordering that the "rule for dissolutionment" issued by the defendant be dismissed and ordering that the "rule for reduction" be made absolute and that the sheriff release all properties seized except the John Deere tractor. No mention was made of defendant's claim for damages and attorney's fees.
On the same day, November 15, 1973, judgment was rendered by default in favor of plaintiff and against defendant in the sum of $874.50, legal interest and costs. The default judgment also ordered that the writ of attachment be maintained, that the lien and privilege resulting from the attachment upon the John Deere tractor be recognized, that the property be sold according to law, and that the judgment be paid from the proceeds of the sale by preference and priority over all other creditors of the defendant.
Pursuant to written motion, defendant was granted a devolutive appeal from the judgment on the rule. The defendant did not appeal from the default judgment.
In this court plaintiff has filed two motions to dismiss defendant's appeal. The first motion is based on an alleged failure of defendant to post the devolutive appeal bond timely and an alleged failure to pay court costs and to have the transcript *908 timely lodged in the Court of Appeal. This motion is without merit because the record reflects that the bond was timely filed within the period prescribed by law and that costs were paid and the transcript timely lodged pursuant to an order extending the return date.
The second motion to dismiss presents a serious and difficult procedural question. The motion is based on the contention that the judgment appealed from is an interlocutory judgment which does not cause irreparable injury and is not appealable. Plaintiff further contends that the interlocutory judgment was, in effect, merged into the final default judgment which maintained the writ of attachment, from which judgment defendant did not appeal and which judgment is now final. In support of its right to appeal, defendant urges that the judgment denying its motion to dissolve the attachment and rejecting its demands for damages and attorney's fees is a final judgment insofar as its claims for damages and attorney's fees are concerned and is, therefore, appealable.
LSA-C.C.P. Art. 2083 provides that an appeal may be taken from a final judgment and from an interlocutory judgment which may cause irreparable injury.
LSA-C.C.P. Art. 1841 defines an interlocutory judgment as a judgment that does not determine the merits but only preliminary matters in the course of the action. A final judgment is defined as a judgment that determines the merits in whole or in part.
The question then is whether the judgment from which defendant appealed is a final judgment or is an interlocutory judgment which may cause irreparable injury.
Defendant's motion to dissolve the writ of attachment with a prayer for recovery of damages, including attorney's fees, for the wrongful issuance of the writ was filed pursuant to LSA-C.C.P. Art. 3506 which provides:
"The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.
"The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits."
It has been held that a judgment dissolving a writ of attachment is an appealable interlocutory judgment. Pittman v. Lilly, 197 La. 233, 1 So.2d 88 (1941) and cases cited therein.
It has also been held that a judgment denying a motion to dissolve a writ of attachment or sequestration is an interlocutory judgment which does not cause irreparable injury and is not appealable. Louisiana Retail Food Dealers', Assn., Inc. v. DeLaHoussaye, 170 So.2d 720 (La.App.4th Cir. 1965); Gierczic v. Gierczic, 150 So.2d 84 (La.App.4th Cir. 1963); General Motors Acceptance Corp. v. McCarthy, 50 So.2d 520 (La.App.Orl.Cir. 1951). It is to be noted, however, that in none of the cited cases was the motion to dissolve coupled with a demand for damages and attorney's fees. The issue of damages was not litigated on the trial of the motion to dissolve.
Defendant concedes the interlocutory nature of that portion of the judgment overruling the motion to dissolve. Defendant contends, however, that the portion of the judgment rejecting its demands for damages including attorney's fees is a final judgment, citing particularly Talley v. Bradley, 177 So.2d 624 (La.App.3d Cir. 1965). In the Talley case, the defendants appealed from a judgment dissolving a writ of sequestration and condemning the *909 plaintiff to pay to defendants damages in the sum of $125 representing attorney's fees in dissolving the writ, but rejecting defendants' demands for additional damages. Plaintiff-appellee filed a motion to remand in the court of appeal on the ground that the judgment was an interlocutory judgment which was not appealable as no irreparable injury was shown. The court of appeal held that although the judgment appealed from did not decide all points in controversy between the parties, it did constitute a final judgment on the incidental demand of defendants for damages for the wrongful issuance of the writ of sequestration. As to that issue it acquired the authority of the thing adjudged. The court held the judgment appealed from was a final judgment and appealable under LSA-C.C.P. Art. 2083. The motion to remand was denied. In reaching the result that the judgment of the trial court was a final judgment, the court of appeal treated the proceeding seeking damages for wrongful issuance of the writ as an incidental demand under LSA-C.C.P. Art. 1915. Under that Article a final judgment may be rendered on the incidental demand separate from the principal demand even though it may not adjudicate all of the issues in the case. Such a judgment is appealable and the trial court retains jurisdiction to adjudicate the remaining issues of the case.
In Louisiana Power & Light Co. v. Crescent Prop. Co., Inc., 267 So.2d 740 (La.App.4th Cir. 1972) the defendant obtained the dissolution of a writ of attachment by contradictory motion and additionally was awarded damages including attorney's fees. Plaintiff filed a motion for new trial. Defendant opposed the motion for new trial and in its answer to the motion sought further damages in the form of attorney's fees incurred in resisting the motion for a new trial. The trial court denied the motion for a new trial and also denied defendant's claim for additional damages. Defendant appealed from the judgment of the trial court denying additional damages sought in opposing the motion for a new trial. In denying the plaintiff's motion to dismiss the appeal, the court of appeal held the judgment of the trial court was a final judgment of the issue of additional damages and was appealable under Article 2083. The motion to dismiss was denied.
Kinchen v. Kinchen, 256 La. 28, 235 So.2d 81 (1970) involved an analogous situation. In that case judgment was rendered in the trial court dissolving a temporary restraining order, denying a request for a preliminary injunction and granting an award of damages and attorney's fees in the amount of $300. Plaintiff appealed. The court of appeal dismissed the appeal on the basis that it was not timely filed within fifteen days from the date of the judgment as required by LSA-C.C.P. Art. 3612 dealing with injunction proceedings. The supreme court reversed, holding that the portion of the judgment decreeing a money judgment for the wrongful issuance of the restraining order is a final judgment even when coupled with an interlocutory order in a preliminary injunction proceeding. The court went on to hold that notice of judgment was required under LSA-C.C.P. Art. 1913 which provides for notice of the signing of a "final judgment" when a case has been taken under advisement and that the delay for filing the appeal did not begin to run until the mailing of the notice of judgment. The appeal was held to be timely and the case was remanded to the court of appeal for consideration of the merits.
Thus, it appears to be established in the jurisprudence that a judgment dissolving a writ of attachment or sequestration and awarding damages is a final judgment and is appealable, at least as to that portion of the judgment awarding damages. Plaintiff argues, however, that a distinction should be made between a judgment dissolving the writ and awarding damages and a judgment denying dissolution and thereby refusing the demand for *910 damagesthe former being final but the latter being merely interlocutory.
Plaintiff's argument is forceful, but we conclude the distinction is not valid. The reasoning of the Talley case, which we find to be well considered and sound, applies as much to a judgment refusing damages as to a judgment awarding damages. The defendant's claim for damages is in the nature of a reconventional demandan incidental demand. Under Article 1915 where a final judgment is rendered on the incidental demand separate from the principal demand, such judgment is appealable without regard to whether the incidental demand is granted or rejected. In this instance the judgment denying dissolution of the writ of attachment and consequently rejecting defendant's demands for damages finally adjudicated the issue of defendant's entitlement to damages. It was a separate final judgment rendered on the incidental demand and is appealable.
The fact that defendant did not contest plaintiff's principal demand for a money judgment on a debt and did not appeal from that judgment should have no effect on defendant's right to appeal from that judgment rejecting his claim for damages. Although the default judgment on the merits orders that the writ of attachment be maintained, the only effect of this portion of the judgment is to preserve plaintiff's privilege as provided in LSA-C.C.P. Art. 3511, a matter of ranking between plaintiff and other creditors and not a matter in dispute between plaintiff and defendant.
Plaintiff's motions to dismiss defendant's appeal are overruled and we turn to a consideration of the issues of whether the writ of attachment was wrongfully issued and, if so, the amount of damages to which defendant is entitled.
L.S.A.-C.C.P. Art. 3501 provides:
"A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.
"The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully."
LSA-C.C.P. Art. 3541 sets forth the grounds for attachment as follows:
"A writ of attachment may be obtained when the defendant:
"(1) Has concealed himself to avoid service of citation;
"(2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;
"(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;
"(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or
"(5) Is a nonresident who has no duly appointed agent for service of process within the state."
The only allegation contained in plaintiff's petition relating to grounds for attachment is the allegation that "it lies within the power of the defendant,... to mortgage, assign, dispose of or remove from this Parish, with the intent to defraud its creditors or to place beyond the reach of its creditors," certain property described in the petition. None of the grounds for attachment listed in Article 3541 clearly appear from specific facts alleged in the petition. Stated otherwise, the petition does not allege any of the grounds for attachment enumerated in Article 3541. The petition alleges that it lies within the *911 power of the defendant to mortgage, assign or dispose of its property with the intent to defraud its creditors, but the grounds provided in Article 3541 are that the defendant has done or is about to do these actsnot that it lies within the power of the defendant to do so. The petition alleges that it lies within the power of the defendant to move its property from the parish, but such fact is not one of the grounds enumerated in Article 3541.
Having failed to specifically allege any of the lawful grounds for attachment, the writ of attachment was wrongfully issued and should have been dissolved on defendant's contradictory motion.
The applicable law is set forth in Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (1970):
"Strict application of the rules established for the issuance of conservatory writs has been uniformly required by the Courts in the past. It is implicit in those remedies that they should not be availed of unless the conditions which permit them exist; that is to say, it is a prerequisite to their issuance that the proper grounds be alleged and sworn to."
In Hancock the supreme court held that a writ of sequestration should not have been maintained where the petition failed to allege one of the specific grounds for the issuance thereof enumerated by Article 3571 of the Code of Civil Procedure, and further held that the articles dealing with attachment and sequestration, dealing as they do with an extremely harsh remedy which is only extended where the formalities of the law have been strictly and literally complied with, do not permit an amendment or enlargement of the pleadings by the introduction of evidence once the defendant has moved to dissolve a conservatory writ.
The writ of attachment in this case was also wrongfully issued for the reason that security was not furnished in accordance with Article 3501 and Article 3544. Article 3501 requires that the applicant shall furnish security as required by law and Article 3544 provides that the security required for the issuance of a writ of attachment shall be for the amount of the plaintiff's demand, exclusive of interest and costs. The bond furnished in this instance was for $250 although the plaintiff's demand was for $874.50. Again, the mandatory specific provisions of the Code were not complied with and the writ was wrongfully issued.
It should also be noted that the evidence offered at the trial of the rule likewise did not establish any of the grounds for attachment provided by law. It was not proved that defendant had or was about to mortgage, assign or otherwise dispose of his property or that it had an intent to defraud its creditors or to give an unfair preference to some of its creditors or that it had or was about to permanently leave the state. At best, from plaintiff's standpoint, it was established that plaintiff was advised by one of defendant's supervisory employees to the effect that he ought to seize the defendant's property if he hoped to get paid. It was also established that defendant was in financial difficulty. None of this evidence supports a finding that any of the grounds for attachment actually existed at the time the writ issued. Furthermore, as pointed out above, the wrongful issuance of the writ cannot be cured by subsequent amendment or enlargement of the pleadings by the introduction of evidence after a motion to dissolve has been filed. As stated in American Steel Building Co. v. Brezner, 158 So.2d 623 (La.App.3d Cir. 1963):
"The writ of attachment is the harshest of conservatory writs; to sustain it, the evidence must clearly show that the plaintiff's right to it existed at the time the writ issued. Charles A. Kaufman Co. v. Gregory, La.App.Orl., 145 So.2d 119 (reversed on other grounds, 244 La. 766, 154 So.2d 392), citing the jurisprudence to this effect. Thus, even though *912 the surrounding circumstances at the time the writ issues may reasonably seem to justify the attachment; the attachment will not be sustained if, on trial of the motion to dissolve it, the evidence shows that in fact the statutory ground for the attachment did not exist. Douglas Public Service Corp. v. Leon, 196 La. 735, 200 So. 21 (1941). The creditor attaches at his risk that, whatsoever the appearances at the time of attachment, the evidence on a motion to dissolve will prove that in fact no lawful grounds existed to support the attachment."
Having determined the writ was wrongfully issued, the next issue is the amount of damages to which defendant is entitled. Defendant sought to establish a loss of profit which would have been earned by use of the equipment seized and also the cost of renting other equipment for use in place of the seized equipment. The evidence is insufficient to support an award for either of these items. It was not established by a preponderance of the evidence that the property could have been used profitably during the period it was under seizure or what the margin of profit from use of the machines might be. Although there was some testimony by the president of the defendant corporation that other equipment was rented for use on other jobs in other areas, it was not clearly established nor corroborated that the rental of such equipment was caused by the seizure of the equipment involved in this suit. Further, there was evidence that the equipment under seizure here was not being used and was not in working order at the time of the seizure. The applicable rule of law was well stated in Talley v. Bradley, supra, as follows:
"Where the sequestration has been wrongfully issued, the defendant is entitled to recover the actual damages which he sustained as a result thereof, including damages for loss of profit and loss of use of the movables sequestered. The proof to substantiate such claims of damages, however, must be clear and definite and not subject to conjecture. Tri-State Finance Corporation v. Surry, La.App. 2 Cir., 139 So.2d 100; and Ralph's Fleet, Inc. v. American Marine Corporation, La.App. 4 Cir., 157 So.2d 317."
Defendant is entitled to recover its attorney's fees incurred in connection with the motion to dissolve in the district court. The evidence shows defendant's counsel spent approximately ten hours in preparing the motion to dissolve, answering plaintiff's interrogatories relating to the grounds for the writ of attachment, preparing a memorandum of authorities, and preparation for trial of the rule. Counsel also spent approximately two and one-half hours at the trial. Counsel has also rendered services on appeal including preparation of a brief and oral argument. We conclude that the sum of $750 should be awarded for attorney's fees. See Talley v. Bradley, supra and Victory Electric Works, Inc. v. Maryland Casualty Co., 140 So.2d 182 (La.App.4th Cir. 1962).
For the reasons assigned, the judgment appealed from is reversed and there is judgment in favor of defendant, Utility & Maintenance Contractors of America, Inc., and against plaintiff, Joe C. Smith, d/b/a Joe C. Smith & Co., in the amount of Seven Hundred Fifty and no/100 ($750) Dollars. Plaintiff is cast for all costs relating to the motion to dissolve and all costs of this appeal.
Reversed and rendered.
Before AYRES, BOLIN, PRICE and HALL, JJ.
AYRES, Judge.
A rehearing was granted to afford the court an opportunity to again review the questions appertaining to the legality of defendant's appeal, as well as the merits of plaintiff-appellee's motions to dismiss the appeal and the propriety of this court's action in awarding damages to defendant *913 for the alleged wrongful attachment of its property.
A resume of the facts is contained in our original opinion and need not be restated except as may be deemed necessary to an understanding of the issues now under consideration as they are resolved.
This action was based upon an open account in the sum of $874.50, allegedly for services rendered defendant with reference to its machinery and equipment. Defendant was alleged to be a Louisiana domestic corporation with its principal place of business in New Orleans.
As a basis for the issuance of the writ of attachment directed against defendant's property located in Lincoln Parish, Louisiana, plaintiff alleged in his petition that "it lies within the power of the defendant, Utility & Maintenance Contractors of America, Inc., to mortgage, assign, dispose of or remove from this Parish, with the intent to defraud its creditors or to place beyond the reach of the creditors" certain described machinery and equipment.
No answer was filed to plaintiff's demands for the reasons assigned in oral argument before this court to the effect that defendant conceded the correctness of the account sued upon and recognized its obligation to pay.
Defendant did, however, present a motion to dissolve the attachment on the grounds that there was no alleged or established basis for the attachment. In this motion defendant further claimed that the levy under the attachment was excessive and that the bond given for the writ was insufficient. In disposing of the motion, the validity of the attachment was upheld and the motion to dissolve overruled. The levy was, however, held excessive and ordered reduced. The attachment bond was found to be insufficient and was ordered increased. The minutes of the court for October 11, 1973, reflect the aforesaid action. Formal judgment was signed on November 15, 1973.
On plaintiff's principal demand, as heretofore noted, a default was confirmed and judgment was rendered and signed, also on November 15, 1973, awarding judgment in plaintiff's favor against the defendant for the principal sum sued for, together with interest and costs. The writ of attachment was recognized, maintained, and ordered enforced in this language:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the writ of attachment issued herein be maintained and that the lien and privilege resulting from the attachment upon one John Deere Tractor # 45870, with side boom, be recognized; that the said property be sold according to law and that this judgment be paid from the proceeds of the sale by preference and priority over all other creditors of the defendant."
This judgment was final. No appeal was taken therefrom. The time for taking an appeal has expired. It thus appears that the legality or validity of the attachment may no longer be questioned.
Appropriate to the question presented here is an observation made by the Supreme Court on rehearing in the matter of Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805, 814-815 (1882):
"No appeal having been taken, and the delay allowed by law therefor having expired, the finality of the judgment is as complete as if it had been reviewed and affirmed by this Court.

"No principle of the law is more inflexible than that which fixes the absolute conclusiveness of such a judgment upon the parties and their privies. Whether the reasons upon which it was based were sound or not, and even if no reasons at all were given, the judgment imports absolute verity, and the parties are forever estopped from disputing its correctness. Cooley on Const. Lim, pp. 47 et seq., and authorities there cited.

*914 "`Matters once determined in a court of competent jurisdiction, may never again be called in question by parties or privies against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court.' Bigelow Est. 3d Ed., Outline, p. lxi, 29, 57, 103.
"`The estoppel extends to every material obligation or statement which, having been made on one side and denied on the other, was at issue in the cause, and was determined therein.' Aurora v. West, 7 Wall. 102 [19 L.Ed. 42]; [Doty v. Brown] 4 N.Y. 71 [53 Am.Dec. 350]; [Bryan v. Atchison] 2 A. [La.Ann.] 462; [Scuddy v. Shaffer] 14 An. 576; [Plicque v. Perret] 19 La. 318; [Gilman v. Horseley] 5 [Mart.] N.S. [661,] 664; [Dufour v. Camfrane (Camfranc)] 11 M. [Mart., O.S.] 607 [13 Am.Dec. 360]; [Patterson v. Bonner] 14 La. 233; [Martin v. Martin's Heirs] 5 [Mart.] N.S. [165] 170.
"It is vain now to contend that the proceedings anterior to the suit, upon which the liability of the defendants and of the property was based, were absolute nullities. That was matter of defense to the suit. The court, in rendering judgment, necessarily affirmed the validity of those proceedings, and, right or wrong, it stands as a thing adjudged.

"Equally vain is it to contend that the court had no right to order the property to be seized and sold. This was the relief asked in the suit and adjudged by the court, and is equally concluded by the judgment. The proceedings in execution being conformable to the express terms of the judgment, cannot be questioned.
"We find nothing in the facts, as presented by the record, or in the argument and authorities of plaintiffs' counsel, to restrain or avoid the application of these well settled principles." (Emphasis supplied.)
This pronouncement has been quoted with approval on many occasions, and the principles enunciated have become firmly established in the jurisprudence of this State. See, also:
Fouchaux v. Board of Commissioners, 65 So.2d 430, 434 (La.App., Orl., 1953).
In Hogan v. Hogan, 182 La. 1057, 162 So. 772 (1935), where a judgment ordering the administration of successions and appointing an administrator therefor was not appealed from within one year, the question of the necessity for the administration of the successions was concluded and hence claimant was not entitled to a sheriff's sale of property belonging to the successions to effect a partition by licitation until the termination of the administration, especially where the administration had been in progress with claimant's acquiescence for more than a year. The court pointed out:
"Whether the plea of res judicata and the plea of estoppel are or are not technically sound, it appears that the question of necessity for an administration of the successions is a closed issue."
Defendant's demand for damages is, as it must be, based upon the wrongful issuance of the attachment. The court may allow damages only for the wrongful issuance of a writ of attachment. LSA-C.C.P. Art. 3506.
On two occasions, as hereinabove noted, the trial court upheld the validity of and maintained the writ of attachment with which we are now concerned. The judgment thus rendered on the merits of the case, as hereinabove pointed out, has become final. Hence, the question of the propriety of the award of damages has been determined adversely to defendant.
A judgment dissolving a writ of attachment as having been wrongfully issued has been held to constitute res judicata on the right to damage. General Motors Acceptance Corporation v. Sneed, 167 *915 La. 432, 119 So. 417, 421 (1928); J. J. McDaniel & Co. v. L. H. Gardner & Co., 34 La.Ann. 341 (1882).
The reverse should be equally true. A judgment maintaining a writ of attachment should be definitive as to the lack of such right. Therefore, plaintiff's demand for damages based on a wrongful issuance of the writ must be rejected.
In view of our aforesaid conclusion that no basis was established for the award of damages for the wrongful issuance of the attachment, no necessity exists for a determination of other issues presented by the pleadings. No good purpose could thereby be served.
The judgment appealed is thus affirmed at defendant-appellant's costs.
Affirmed.